

**ORDERED in the Southern District of Florida on May 02, 2011.**

_____
**A. Jay Cristol, Judge
United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov**

| | |
|---|---|
| In re: | Case No.: 10-26423-AJC |
| INFOLINK GROUP, INC., | Chapter 11 |
| Debtor. | (Jointly Administered) |
| In re: | Case No.: 10-26436-AJC |
| INFOLINK INFORMATION SERVICES, INC., | Chapter 11 |
| Debtor. | |

| | |
|---|---|
| DREW DILLWORTH, Chapter 11 Trustee for INFOLINK GROUP INC., and INFOLINK INFORMATION SERVICES, INC., <br><br>     Plaintiffs,<br>vs.<br><br>PRIEUR J. LEARY, III, INFOLINK PANAMA CORP., S.A., INFOLINK COMMUNICATION SERVICES, INC., PRONTO GROUP, L.L.C., PRONTO GROUP, INC., JUAN KOSMAS, MARISOL VIQUEZ, SEVERINO HERNANDEZ, BENILDA PEREZ, | Adv. Case No.: 11-01885 |

1

| | |
|---|---|
| OCTAVIO DIAZ, and JONATHAN HAM, jointly and severally, along with MODERNBILL n/k/a PARALLELS. INC., AUTHORIZE.NET, LLC, CYBERSOURCE CORPORATION, INNOVATIVE MERCHANT SOLUTIONS, AMERICAN EXPRESS COMPANY, PAYPAL, INC., DISCOVER FINANCIAL SERVICES, AMERICAN REGISTRY FOR INTERNET NUMBERS, INC., MELBOURNE IT LTD., GO DADDY.COM, INC., and HSBC BANK USA, N.A.<br><br>    Defendants. | |

## SUPPLEMENTAL DECISION AND ORDER GRANTING PRELIMINARY INJUNCTION

This matter came before the Court on April 18, 2011, and April 20, 2011, on evidentiary hearing, and for the reasons indicated below, the motion for preliminary injunction is granted. The case involves allegations of fraudulent transfer of the Debtors' assets associated with an Internet related business. The Debtors provide off-site dedicated servers and other Internet services to the public.

On March 24, 2010, Infolink Group, Inc. ("<u>Infolink Group</u>") and its wholly owned subsidiary, Infolink Information Services, Inc. ("<u>Infolink Information Services</u>"), filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in the District of Delaware. On June 2, 2010, the Delaware Bankruptcy Court entered an Order pursuant to Bankruptcy Rule 1015(b) directing the administrative consolidation and joint administration of both cases [DE 4-10][1] and on June 2, 2010, the Delaware Bankruptcy Court transferred the cases to this Court, the United States Bankruptcy Court for the Southern District of Florida [DE 1]. On

---

[1] The Delaware Bankruptcy Court Order has been re-docketed in the United States Bankruptcy Court for the Southern District of Florida.

August 30, 2010, after an evidentiary hearing on August 26, 2011, this Court entered an Order Appointing a Chapter 11 Trustee for both Debtors [DE 127].[2]

In this adversary matter, on April 4, 2011, the Court entered a Temporary Restraining Order [DE 5] and scheduled a hearing to consider whether to convert the Temporary Restraining Order into a Preliminary Injunction on April 18, 2011. In the same scheduling Order, the Court also expedited discovery, and permitted depositions and document production on five days written notice, so that the parties could conduct discovery prior to the hearing on the Preliminary Injunction [DE 7].

In accordance with the accelerated discovery Order, the Trustee noticed Defendant Prieur J. Leary III (hereafter "Leary") for Deposition and Document Production on April 13, 2011. Leary failed to appear or produce documents.[3] Nevertheless, the Preliminary Injunction hearing was conducted on April 18, 2011, as scheduled.

The only Defendant objecting to the Preliminary Injunction was Infolink Communication Services, Inc. ("Infolink Communication"), which relied upon, *inter alia,* an affidavit of its President, Leary. Infolink Communication was represented by attorney Brian Behar, Esq. for the firm of Behar, Gutt & Glazer, P.A. Mr. Behar appeared at the April 18, 2011, hearing for Infolink Communication.

---

[2] Barry Mukamal was initially appointed Chapter 11 Trustee, and thereafter resigned. Drew Dillworth thereafter was appointed substitute Chapter 11 Trustee.

[3] During this period, although Leary did not appear for his deposition or produce documents, Defendant Infolink Communication Services, Inc. (Leary is President), and thereafter Infolink Communication Services, Inc., Pronto Group, LLC, Pronto Group, Inc, Leary, Octavio Diaz and Jonathan Ham filed appeals of the Temporary Restraining Order to the United States District Court (District Court Case No. 11-21300; District Court Case No. 11-21409), both of which have since been dismissed. Defendant Octavio Diaz, who was not an appellant in District Court Case No 11-21300, appealed the dismissal of District Court Case No. 11-21300 to the United States Court of Appeals for the Eleventh Circuit (Case No. 11-11748-G) and filed an emergency motion to dissolve the Temporary Restraining Order. The United States Court of Appeals denied the emergency motion to dissolve the Temporary Restraining Order and has issued an Order to Show Cause why the appeal to that Court should not be dismissed for lack of standing.

On April 18, 2011, the Court heard testimony from Trustee Dillworth for approximately two and a half hours and the hearing was continued to 4 o'clock on April 20, 2011. On April 19, 2011, prior to the continued preliminary injunction hearing, Mr. Behar filed an Emergency Motion to Withdraw from continued representation of Infolink Communication based upon irreconcilable differences. The Court granted the Motion to Withdraw on April 20, 2011, prior to the continued hearing [DE 48]. New counsel, Jason Weber, Esq. of the law firm of Xander Law Group P.A., represented Infolink Communication at the continued preliminary injunction hearing.

On April 20, 2011, the Court heard further direct testimony from Trustee Dillworth, who was then subject of cross-examination by counsel to Infolink Communication. Infolink Communication failed to introduce any live witnesses.

Most of the exhibits introduced during the testimony of Trustee Dillworth were drafted by, directed by, or could be established by, Leary who, as indicated, failed to appear for his deposition and failed to produce documents. He did not appear at the hearing.

The Court reviewed all the exhibits provided by Trustee Dillworth and entered most into evidence. In connection with its review and consideration of the Trustee's exhibits, the Court notes that the United States Supreme Court has observed that the decision of whether to award preliminary injunctive relief is often based on "procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v Camenish*, 451 U.S. 390, 395, 101s. Ct. 1830, 68l.ed.2d 175 (1981). In *Levi Strauss and Co. v Sunrise International Trading, Inc.* 51 F 3d 982 (11 Cir. 1995), the Eleventh Circuit has stated that at the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence in connection with a final hearing for permanent injunction, if the evidence is "appropriate given the character and objectives of the injunctive proceeding." Indeed, the

4

Circuits uniformly permit District Courts to rely on hearsay evidence for the limited purpose of determining whether to award a preliminary injunction. *See KOS Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 718 (3d Cir. 2004); *PY, Inc. v. GMA Accessories, Inc.,* 132 F.3d 1167, 1170-71 (7th Cir. 1997) *Sierra Club v. FDIC,* 992 F.2d 545, 551 (5th Cir. 1993) (courts at preliminary injunction stage "may rely on otherwise inadmissible evidence, including hearsay evidence"); *Asseo v. Pan Am. Green Co.*, 805 F.2d 23, 26 (1st Cir. 1986); *Flynt Distrib., Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984). Lower courts routinely consider hearsay evidence in determining whether to grant preliminary injunctive relief. *United States v Buddhu*, 2008 WL 2355930 (D. Conn. 2008). The admissibility of hearsay under the Federal Rules of Evidence goes to weight, not preclusion, at the preliminary injunction stage. To hold otherwise would be at odds with the summary nature of the remedy and would undermine the ability of Courts to provide timely provisional relief. *Mullins v. City of New York*, 626 F.3d 47 (2d Cir. 2010).

It is also noted that, because Leary failed to abide by this Court's Order to appear for his deposition prior to the injunction hearing, the Trustee filed a Motion for Sanctions under Fed.R.Civ.P. 37, as made applicable by Bankruptcy Rule 7037 [DE 19]. With respect to Defendant Leary, the Court is authorized under this Rule to accept as established Trustee Dillworth's factual presentation without the necessity of receiving any evidence.

At the hearings, Trustee Dillworth testified that he considered and relied upon a number of documents, affidavits, testimony, interviews, and other circumstances in concluding that Leary, Infolink Panama Corp., S.A. ("<u>Infolink Panama</u>"), Infolink Communication, Pronto Group, LLC., Pronto Group, Inc., Juan Kosmas, Marisol Viquez, Severino Hernandez, Benilda Perez, Octavio Diaz, and Jonathan Ham (collectively referred to in the Complaint and referred to hereafter as "<u>Primary Defendants</u>") engaged in systematic and deliberate acts so as to directly

and indirectly cause the fraudulent transfers of the cash, the income stream, and the core business assets, of Infolink Group and Infolink Information Services.

## FINDINGS OF FACT

After considering Trustee Dillworth's testimony on both direct and cross-examination, and after considering the documentary evidence supplied by Trustee Dillworth and entered into evidence before the Court, the Court makes the following findings of fact:[4]

1. As of 2000, Infolink Group had two wholly owned subsidiaries, Infolink Information Services and Infolink Communication. However, as testified to under oath by Leary in a prior case before this Court, to which the Court takes judicial notice, and by or about 2005, Infolink Communication's business had been wound down. As of 2005, Infolink Information Services was the sole operating subsidiary company of Infolink Group.

2. Infolink Information Services provided offsite electronic data storage, dedicated servers, and related Internet services (hereafter "Internet Services") to the public under the brand name "Pronto" and primarily by and through the "ServerPronto.com" website on the Internet. The "Pronto" brand today includes "ServerPronto," "CloudPronto," "MPronto," and "ColoPronto" (hereafter the "Pronto Brand") and does business under the following domain names: ServerPronto.com; ColoPronto.com; CloudPronto.com; MPronto.com and Infolink.com (hereafter the "Pronto Domains"). ServerPronto, CloudPronto, etc. are a brand names and the Pronto Brand has public recognition and considerable intrinsic value.

3. As of 2005, the ServerPronto.com Internet Services business used thousands of servers, which were secured and maintained and continue to be used, secured, and maintained at a warehouse facility located at 1961 NW 22nd Street, Miami, FL 33142.

---

[4] To the extent that there may be mixed findings of fact and conclusions of law, these findings shall not be deemed to be restrictively interpreted.

4. The ServerPronto.com website was established in 2003, and it operated and did business through Infolink Information Services. As of 2005, all ServerPronto and all Pronto Brand business was handled by Infolink Information Services. Indeed, through at least August, 2010 (post-petition), the ServerPronto.com website payment set-up web page was authenticated and warranted by Infolink Information Services; Infolink Information Services' bank statements from 2005 through 2008 show substantial income; and Mr. Leary's own testimony in other matters before the Court indicates that Infolink Information Services was the operating company for ServerPronto.com. Although Defendant Infolink Communication now alleges by way of Leary affidavit that it, and not Infolink Information Services, was the operating company for ServerPronto.com and the Pronto Brand, all the evidence indicates that Infolink Information Services was the operating company for the Pronto Brand, including Leary's own prior testimony on two occasions.

5. James Christopher Kurzweg ("Kurzweg") was a founder, former employee and former officer of the Debtor entities. In August, 2007, Kurzweg commenced an arbitration proceeding against Debtors based upon Leary's termination of Kurzweg as an employee and officer of the companies. That arbitration concluded with an award in Kurzweg's favor on September 16, 2008, within two years of the filing of these cases. On October 23, 2008, a modified award of $713,044.00 in unpaid compensation and 2,050,568 shares of stock in Infolink Group was entered for Kurzweg ("Kurzweg Arbitration Award"). Leary, as President of the Debtors, voluntarily filed these cases in Delaware on March 24, 2010, the evening before a hearing set by Kurzweg in the Miami-Dade County Circuit Court for Kurzweg to obtain a Final Garnishment Judgment against the accounts of Infolink Information Services and Infolink Group.

6. In 2008, during the time of the then ongoing Kurzweg arbitration proceeding, more than $1,045,000.00 was transferred from Infolink Information Services' checking accounts without explanation or discernable consideration, to a Panamanian entity by the name of Infolink Panama Corp., ("Infolink Panama"), including a withdrawal of $250,000.00 on the day of the initial arbitration award and $200,000.00 the day before such award. These transfers were originated by Leary and/or one or more of the Primary Defendants.

7. Defendant Infolink Communication in this case asserts that it was the operating entity for ServerPronto.com, and that it transferred the ServerPronto.com business to Infolink Panama in February of 2006, more than four years before the filing of these cases, pursuant to a "Private Agreement."

8. The majority of the 2008 transfers from Infolink Information Services to Infolink Panama occurred within two years of the filing of these Chapter 11 cases. Within less than a month of the issuance of the Kurzweg Arbitration Award, the Infolink Information Services primary bank account at SunTrust Bank was drawn down to a zero balance and closed.

9. Notwithstanding deposits to the Infolink Information Services bank account of approximately $3.7 million dollars in calendar year 2008, Leary, as President of Debtors, swore under oath in Debtors' bankruptcy filings in this Court that neither of the Debtors had done any business for the two years preceding March 24, 2010.

10. From its establishment in 2003 through approximately November 20, 2009, the Serverpronto.com website domain, where the Internet Services funds are generated, was administered by "Infolink." After the Kurzweg Arbitration Award, on about November 20, 2009, pre-petition, the administrator for the ServerPronto.com website domain was transferred to an anonymous entity known as "Whois Privacy Protection Services, Inc." Thereafter, on November 22, 2009, the ServerPronto.com administrator was again changed to Infolink Panama.

11. The ServerPronto.com website payment set-up web page was authenticated and warranted by Infolink Information Services through August, 2010, post-petition. Sometime after the appointment of the Trustee and not of the Trustee's doing, the Infolink Information Services' authentication and warranty was removed from the ServerPronto.com payment set-up web page.

12. On March 24, 2009, after the Kurzweg Arbitration Award, and one year prior to filing this case, Leary, as President of, and on behalf of, Infolink Panama, filed a Trademark/Service Mark Application for "ServerPronto" with the Commissioner of Trademarks, United States Patent and Trademark Office. In the Trademark Application, the address given for Infolink Panama was the Infolink Information Services address in Miami and the e-mail address provided in the Trademark Application was "prieur3private@infolink.com." On March 2, 2010, the Trademark Application for ServerPronto was granted to Infolink Panama, 22 days before the filing of this case by Leary on behalf of the Debtors.

13. In late 2008, upon the conclusion of the Kurzweg arbitration, within two years of the filing of this Chapter 11 case, the ServerPronto.com income stream had been transferred to Defendant Infolink Communication and/or Defendant Infolink Panama, S.A., neither of which are Debtors before this Court. Leary is the sole officer, director, President, Treasurer and Secretary of Infolink Communication. Infolink Communication was formed in or about November, 1999. Consistent with Leary's testimony in other proceedings to the effect that Infolink Communication had been "wound down" by 2005, the last annual filing for Infolink Communication was on September 10, 2004, until the company was reinstated on September 18, 2008, less than a week before the Kurzweg Arbitration Award.

14. Intuit QuickBooks Merchant Services, also known as Innovative Merchant Solutions ("Innovative"), a credit card merchant service provider for the ServerPronto.com website, was processing credit cards for the account of Infolink Communication as of the filing

of this case. On August 18, 2010, post-petition and eight days before hearing in this Court on the Motion to Appoint Chapter 11 Trustee, Leary changed the ServerPronto.com credit card account at Innovative to Defendant Pronto Group, Inc. Pronto Group, Inc. is a Delaware corporation formed on June 22, 2010, post-petition and while the Motion to Appoint Trustee was pending in this Court.

15. On April 4, 2011, this Court entered a Temporary Restraining Order [DE 4] restraining the Primary Defendants including Leary from, *inter alia,* "instructing, directing, or communicating with the (Defendant) Merchant Service Providers" and from "accessing any property owned by or controlled by … Infolink Communication." Innovative is one of the Defendant Merchant Service Providers in this case, which were named solely for purposes of obtaining the injunctive relief sought.

16. The Temporary Restraining Order was served on Leary and all of the Primary Defendants on April 6, 2011, by e-mail and by Federal Express.

17. On April 6, 2011, *after entry of the Temporary Restraining Order*, Leary sent a written request to Innovative attempting to change the payee account from Defendant Pronto Group, Inc. to a non-defendant entity, Prontocom, Inc. Prontocom, Inc. is a Delaware corporation that was formed post-petition and after the Trustee's appointment, on December 20, 2010. The attempted transfer of accounts was denied by Innovative because other provisions of the Temporary Restraining Order restrain the Defendant Merchant Servicer Providers from transferring ownership of the merchant accounts.

18. Historically, it appears that Innovative was processing approximately $10,000.00 of credit card transactions a day in connection with the Pronto Brand, including from the period from April 5, 2011 (the day after the Temporary Restraining Order was issued) to April 8, 2011.

On April 9, 2011, five days after entry of the Temporary Restraining Order, Innovative stopped receiving credit card processing from Defendant Pronto Group, Inc.

## CONCLUSIONS OF LAW

Having considered the Trustee's testimonial evidence, the documentary evidence, and having taken Judicial notice of various pleadings and filings in this and other cases, the Court makes the following conclusions of law:

17. To support a Preliminary Injunction, a Court need not find that the evidence positively guarantees a final verdict in Plaintiffs favor. Instead, it must determine whether the evidence establishes: (a) a substantial likelihood success on the merits; (b) a substantial threat of irreparable injury if the injunction were not granted; (c) that the threatened injury to the Plaintiffs outweighs the harm an injunction may cause the Defendant; and (d) that granting the injunction would not dis-serve the public. *Levi Straus, Co. v International Trading Inc., supra.* The Court concludes that the Trustee has met its burden to support the entry of a Preliminary Injunction.

18. <u>A substantial likelihood of success of the merits</u>. The evidence strongly supports the fact that Leary and/or one or more of the Primary Defendants engaged in a series of transfers that have resulted in the diversion from Infolink Information Services of its cash assets, historical income, ongoing income, and the attributes of ownership and administration of ServerPronto.com. The income derived from ServerPronto.com was fraudulently transferred first from Infolink Information Services to Infolink Communication and Infolink Panama, and then from Infolink Communication to Pronto Group Inc. But for this Court's Temporary Restraining Order it appears that at least some of that income would have been transferred to non-defendant Prontocom, Inc. These transfers occurred pre-petition, post-petition in direct violation of the automatic stay under 11 U.S.C. § 362, and in violation of the rights of the

appointed Chapter 11 Trustee who stands in the shoes of the Chapter 11 Debtors under 11 U.S.C. § 1107.

19. The specific fraudulent transfers were as follows:

a. In 2008, during the period of the Kurzweg Arbitration and until the conclusion of the Arbitration in October 2008, Leary and one or more of the Primary Defendants transferred or caused to be transferred more than $1,045,000.00 to Infolink Panama. These transfers of more than $1,045,000.00 to Infolink Panama in 2008 were fraudulent transfers.

b. Since November, 2008, all Infolink Information Services income has been diverted to Defendant Infolink Panama, Defendant Infolink Communication, or some other unknown entity. The incomes diverted since November, 2008, are fraudulent transfers. The income diverted since the filing of these cases is in violation of the bankruptcy automatic stay, 11 U.S.C. § 362.

c. In 2009, Leary as President of Defendant Infolink Panama, a Panamanian entity, filed a trademark application for the ServerPronto mark on behalf of Infolink Panama and not on behalf of Infolink Information Services. The brand was an asset of Infolink Information Services and registering the trademark of this brand in Infolink Panama was a fraudulent transfer.

d. The ServerPronto.com website domain was administered and operated by one or both of the Debtors until late 2009. In November 2009, the ServerPronto.com website domain administrator was transferred to "Whois Privacy Protection Services, Inc." and shortly thereafter again transferred to Infolink Panama, S.A. The transfer of control and administration of the ServerPronto.com website domain from Debtors to Whois Privacy Protection Services, Inc., and thereafter to Infolink Panama, S.A. were fraudulent transfers.

    e. The ServerPronto.com merchant service account with Innovative for credit card processing was transferred pre-petition from Infolink Information Services to Infolink Communication.  Post-petition, it was again transferred to Pronto Group, Inc. just eight days before the hearing on the Motion to Appoint a Chapter 11 Trustee.  Two days after entry of the Temporary Restraining Order, Leary attempted to again transfer it to Prontocom, Inc. but was unsuccessful because of provisions in the Temporary Restraining Order that restrained Innovative from making the requested transfer.  The transfer of the account from Infolink Information Services to Infolink Communication and the transfer of the account from Infolink Communication to Pronto Group, Inc. were fraudulent transfers. The transfer of the account to Pronto Group, Inc. was also a violation of the bankruptcy automatic stay, 11 U.S.C. § 362.

    f. About five days after entry of the Temporary Restraining Order, Innovative stopped receiving credit card transactions in regard to the ServerPronto.com website. Prior thereto, it was processing approximately $10,000.00 per day. The cessation and diversion of these transactions are fraudulent transfers.  They are also violations of the bankruptcy automatic stay, and are direct violations of this Court's Temporary Restraining Order.

 Based upon these transfers, there is a clear and overwhelming substantial likelihood of the Trustee succeeding on the merits of this case.

 20. <u>Substantial threat of irreparable injury if the injunction were not granted</u>. Based on the deliberate, coordinated nature and multitude of fraudulent transfers of assets rightfully belonging to the Debtors, including transfers after the petition date and after the appointment of a Chapter 11 Trustee, there is significant reason to believe that fraudulent transfers would continue without conversion of the Temporary Restraining Order into a preliminary injunction. Indeed, without the issuance of the Temporary Restraining Order and the Court's jurisdiction over the Merchant Servicer Providers, there would have been continued post-petition fraudulent

transfers of the assets of this estate. The evidence is overwhelming that Leary, and possibly other Primary Defendants, have little regard for the Debtors' interests, the bankruptcy automatic stay, the Chapter 11 Trustee's exclusive authority to operate the business, or this Court's Orders. Without a preliminary injunction there would be a clear and substantial threat of irreparable injury to these estates.

21.     <u>Injury to the Plaintiff outweighs the harm an injunction may cause the Defendant</u>. The Preliminary Injunction causes no harm to the Defendants. The Defendants have no property interest in the Debtors' property. On the other hand, without a preliminary injunction, the continued transfers of property of these Debtors offshore or otherwise, would cause direct harm, and most likely irreparable harm, to these estates. Clearly, the injury to the Trustee outweighs any potential harm to Defendants.

22.     <u>Granting the Injunction would not disserve the public interest</u>. In its wisdom, Congress established the concept of property of the estate in Section 541 of the Bankruptcy Code. This action and a preliminary injunction seeks to preserve property of the estate for the benefit of the general creditors. A preliminary injunction does not prevent the business of ServerPronto.com from proceeding. It does not stop the Internet Services that are being supplied to the public. It merely prevents the continuing transfers and diversion of the Debtors' assets to Leary and other Primary Defendants and preserves them for the benefit of Debtors' creditors. A preliminary injunction is clearly in the public interest.

Accordingly, for the reasons stated herein, it is

ORDERED AND ADJUDGED that the Temporary Restraining Order is converted to a Preliminary Injunction as follows:

1.     Unless specifically authorized by Trustee Dillworth, each of the Primary Defendants, including but not limited to Leary, jointly and severally are enjoined from

instructing, directing, or communicating with each of PARALLELS, INC. f/k/a ModernBill ("Parallels"), AUTHORIZE.NET, LLC ("Authorize"), CYBERSOURCE CORPORATION ("CyberSource"), INNOVATIVE MERCHANT SOLUTIONS, LLC ("Innovative"), AMERICAN EXPRESS COMPANY ("AmEx"), PAYPAL, INC. ("Paypal") and DISCOVER FINANCIAL SERVICES ("Discover"), (collectively the "Merchant Servicers") in any respect with regard to (i) the accounts of Infolink Group, Infolink Services, Infolink Communication, Infolink Panama, Pronto Group LLC and/or Pronto Group Inc.; (ii) any accounts that are for the benefit of the Pronto Brand; or (iii) any accounts associated with the Pronto Domains, including but not limited to ServerPronto.com.

2. Unless specifically authorized by Trustee Dillworth, each of the Primary Defendants are enjoined from withdrawing, removing, transferring or otherwise accessing any funds contained in any account(s) at HSBC (the merchant bank) in the name of Infolink Group, Infolink Services, Infolink Panama, Infolink Communication, Pronto Group LLC or Pronto Group Inc., or any account under the Pronto Brand or associated with the Pronto Domains;

3. Unless specifically authorized by Trustee Dillworth, the Primary Defendants are enjoined from transferring, modifying, changing, re-directing, re-registering or otherwise accessing and adjusting any of the Pronto Domains or their IP addresses; and

4. Unless specifically authorized by Trustee Dillworth, the Primary Defendants are enjoined from selling, transferring, hiding, converting, diverting or otherwise accessing any property owned by or controlled by Infolink Group, Infolink Services, Infolink Panama, Infolink Communication, Pronto Group LLC and Pronto Group Inc. without permission or authority of the Trustee.

5. Unless specifically authorized by Trustee Dillworth, the Merchant Service Providers are enjoined from delivering or transmitting any funds collected on the account of

Infolink Group, Infolink Services, Infolink Communication, Infolink Panama, Pronto Group LLC and/or Pronto Group Inc., or any other account name doing business under the Pronto Brand or in connection with the Pronto Domains, to the Primary Defendants, or any of them or their designee(s).

6.     Unless specifically authorized by Trustee Dillworth, the Merchant Service Providers are directed immediately to re-direct, transmit and deliver all funds collected, and to be collected, on the account of Infolink Group, Infolink Services, Infolink Communication, Infolink Panama, Pronto Group LLC and/or Pronto Group Inc., or any other account name doing business under the Pronto Brand or in connection with the Pronto Domains, to the Trustee's merchant account at Bank of America, Bank Routing No. 111000012, Account of Drew M. Dillworth Trustee, Account No. 4437899275, for the Trustee to hold such funds in trust and for the Trustee to direct only so much of said funds as may be necessary, in his sole discretion, to support the Internet Services operations of Debtors, and of Infolink Communication, Infolink Panama, Pronto Group LLC and/or Pronto Group Inc. pending final hearing in this case.

7.     GoDaddy.com and Melbourne IT, Ltd. and ARIN are enjoined from transferring ownership or registration of domain names or IP addresses in respect to Infolink Group, Infolink Services, Infolink Communication, Infolink Panama, Pronto Group LLC, Pronto Group Inc. and/or the Pronto Brand.

8.     HSBC is enjoined from turning over any funds in any HSBC accounts in the name of Infolink Group, Infolink Services, Infolink Communication, Infolink Panama, Pronto Group LLC and/or Pronto Group Inc., and any other account name doing business under the Pronto Brand or in connection with the Pronto Domains, to any of the Primary Defendants or their designees.

9. The Merchant Bank, HSBC, is directed to turn over the contents of all HSBC accounts held in or received in the name of Infolink Group, Infolink Services, Infolink Communication, Infolink Panama, Pronto Group LLC and/or Pronto Group Inc., and any other account name doing business under the Pronto Brand or in connection with the Pronto Domains, to the account of the Trustee at Bank of America, Bank Routing No. 111000012, Account of Drew M. Dillworth Trustee, Account No. 4437899275.

10. HSBC shall continue to turnover, on a daily basis, all funds deposited into all HSBC accounts in the name of Infolink Group, Infolink Services, Infolink Communication, Infolink Panama, Pronto Group LLC and/or Pronto Group Inc. and any other account name doing business under the Pronto Brand or in connection with the Pronto Domains, to the account of the Trustee at Bank of America, Bank Routing No. 111000012, Account of Drew M. Dillworth Trustee, Account No. 4437899275.

# # #

Submitted by:
Geoffrey S Aaronson, Esq.
Aaronson Schantz P.A.
Miami Tower
100 SE 2nd Street, 27th Floor
Miami, Florida 33131
Tel 786.594.3000
Fax 305.675.3880
E-mail gaaronson@aspalaw.com
*Special Counsel to Trustee Dillworth*

Attorney Aaronson is directed to immediately serve a conformed copy of this order upon all interested parties and shall file a certificate of service of same with the Court.

#891176 v1